IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHANE E. P., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 22-cv-00180-SH |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Shane E. P. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying his claim for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court reverses and remands the Commissioner's decision denying benefits.

**I.   Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. To determine whether a claimant is disabled, the

Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir.

2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Background and Procedural History

Plaintiff applied for Title II disability benefits in 2019. (R. 12, 199-200.) In his application, Plaintiff alleged he has been unable to work since February 3, 2018, due to conditions including (1) 27 broken bones in his back and neck (2) and nerve damage causing lost feeling in his left leg. (R. 199, 234.) Plaintiff was 44 years old at the time of the ALJ's decision. (R. 20, 199.) Plaintiff has a high school education and past relevant work as a Construction Worker I. (R. 63-64, 235.)

Plaintiff's claim was denied initially and upon reconsideration. (R. 113-16, 122-25, 127-32.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which the ALJ conducted. (R. 40-71, 133-34.) The ALJ then denied benefits and found Plaintiff not disabled. (R. 12-20.) The Appeals Council denied review on February 22, 2022 (R. 1-5), rendering the Commissioner's decision final, 20 C.F.R. § 404.981. Plaintiff now appeals.

## III.    The ALJ's Decision

In her decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through December 31, 2023. (R. 14.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe impairments: (1) degenerative disc disease of the cervical and lumbar spines; (2) residual effects of fractures in the cervical and thoracic spines; (3) rotator cuff syndrome with arthritic

changes of the left shoulder; and (4) obesity. (*Id.*) At step three, the ALJ found Plaintiff's impairments had not met or equaled a listed impairment. (R. 14-15.)

The ALJ then concluded Plaintiff had the RFC "to perform sedentary work[1] as defined in 20 CFR 404.1567(a)" with the following limitations:

> [N]o more than occasional overhead reaching with the bilateral upper extremities; no more than occasional stooping, kneeling, crouching, crawling, balancing or climbing of ramps or stairs; no climbing of ladders, ropes or scaffolds; and the need to avoid all exposure to workplace hazards, such as dangerous moving machinery and unprotected heights.

(R. 15.) The ALJ provided a recitation of the evidence that went into this finding. (R. 15-17.) At step four, the ALJ found Plaintiff unable to perform his past relevant work. (R. 18.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as escort vehicle driver, food/beverage order clerk, and document preparer. (R. 18-19.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 19-20.)

## IV. Issues

On appeal, Plaintiff asserts the ALJ erred by: (1) failing to discuss "uncontroverted and/or significantly probative evidence that conflicted" with her RFC findings (ECF No. 15 at 7-10[2]); (2) failing to adequately explain the basis for Plaintiff's RFC (*id.* at 10-13); and (3) failing to conduct a proper analysis of his symptoms (*id.* at 13-16). The Court agrees with Plaintiff's third contention and finds that the ALJ's assessment of symptoms was improper. The Court will also address the ALJ's consideration of the record evidence but will not address Plaintiff's remaining argument.

---

[1] Sedentary work requires lifting up to 10 pounds at a time. 20 C.F.R. § 404.1567(a). The ALJ also determined that Plaintiff could "stand and walk no more than 2 hours in an 8-hour day." (R. 17.)

[2] References to page numbers in the parties' briefing refer to the page in the ECF header.

4

V.    **Analysis**

  A.    **The ALJ's Review of the Record.**

Plaintiff first faults the ALJ's consideration of evidence. (*Id.* at 7-10.) Broadly, Plaintiff alleges the ALJ omitted from her decision large portions of the medical record in contrivance of *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). (*Id.* at 7.) Plaintiff maintains that the ALJ "selectively discuss[ed] the medical evidence in order to support an adverse decision." (*Id.*)

In *Clifton*, the Tenth Circuit held that, while the "ALJ is not required to discuss every piece of evidence," the "record must demonstrate that the ALJ considered all of the evidence." *Clifton*, 79 F.3d at 1009-10. It went on to note that "in addition to discussing the evidence supporting [her] decision, the ALJ also must discuss the uncontroverted evidence [she] chooses not to rely upon, as well as the significantly probative evidence [she] rejects." *Id.* Consistent with this requirement, the Tenth Circuit has found it "improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).

To show the ALJ cherrypicked from the record and ignored uncontroverted medical evidence, Plaintiff recounts numerous exam findings that the ALJ did not explicitly discuss in her decision. (ECF No. 15 at 7-10.) For example, Plaintiff points out that, on certain exams, he was found to have muscle spasms in his back, peripheral neuropathy, tenderness in his back and neck, diminished left leg strength, antalgic gait, moderately limited musculoskeletal mobility, diminished sensation, decreased right shoulder mobility, decreased upper extremity strength, markedly positive impingement signs, and decreased neck suppleness. (*Id.*) While the ALJ did discuss some of these exam findings—for

example, citing instances of back spasms, leg weakness, antalgic gait, diminished sensation, and shoulder problems (R. 15-17)—her relatively short consideration of the evidence failed to recount every doctor visit, imaging, or exam. Yet, *Clifton* makes clear the ALJ is under no obligation to do so. *Clifton*, 79 F.3d at 1009-10.

What is unclear from the ALJ's decision, however, is whether the findings the ALJ failed to recount were being rejected or otherwise not relied upon. *Clifton*, 79 F.3d at 1010. It is also not clear whether the ALJ was ignoring evidence that was unfavorable to her position. *Hardman*, 362 F.3d at 681. That said, Plaintiff has offered no evidence that the omitted exam findings were out of step with the sedentary RFC. Moreover, the omitted findings were not markedly different than those the ALJ considered—although, as Plaintiff points out, the overall effect of the omissions creates an impression that his unfavorable exams were outweighed by his normal ones.

Creating further confusion in her consideration of the evidence, there also appears to be a pattern where the ALJ mentioned positive findings from an exam while minimizing or omitting observed negative functional limitations. For instance, the ALJ noted a July 2019 exam where Plaintiff had "impaired sensation in his right leg and an antalgic gait," but indicated "the clinical physical examination was [otherwise] within normal limits." (R. 15.) The ALJ omitted that this same exam showed Plaintiff was also found to have a moderately limited musculoskeletal range of motion and mild right leg weakness. (R. 933-34.) Later, the ALJ noted November and December 2019 exams as showing Plaintiff's "back was normal with no tenderness to palpation, and gait and stance were also normal." (R. 16.) The ALJ declined to mention, however, that Plaintiff exhibited abnormal range of motion in his musculoskeletal system, tenderness and limitation in motion of his right shoulder, and abnormal movement in all extremities. (R. 984-85.) Addressing a May 2020

exam, the ALJ similarly noted that Plaintiff had an "abnormal antalgic gait," but that "the examination was within normal limits otherwise." (R. 16.) The ALJ did not mention Plaintiff's limited musculoskeletal range of motion or the difficulty lifting his right arm secondary to shoulder pain. (R. 1026.)

Misstatements or misrepresentations of the record have been found to deprive an RFC of substantial evidentiary support. *See*, *e.g.*, *Hamblin v. Colvin*, No. 2:13-CV-887 TS, 2015 WL 1505770, at *12 (D. Utah Mar. 31, 2015) (finding that because "the ALJ misstates the record, the undersigned has difficulty concluding substantial evidence supports the ALJ's . . . reason to accord Dr. Salter's opinion little weight"); *Krauser v. Astrue*, 638 F.3d 1324, 1332-33 (10th Cir. 2011) (remanding, in part, for the ALJ's misrepresentation of the claimant's symptom testimony). But the Court need not decide whether the omissions is this case are so consequential. Instead, the Court's determination here turns on the ALJ's assessment of Plaintiff's symptoms. The Court, however, will consider the ALJ's selective recitation of the record and the extent it impacted that symptom analysis—particularly, whether substantial evidence supported the analysis.

**B.     The ALJ's Symptom Assessment.**

**1.     General Requirements**

Generally, when evaluating a claimant's symptoms, the ALJ uses a two-step process.[3] *See* Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, *2 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529 (regulation governing the evaluation of symptoms). First, the medical signs or laboratory findings must show the existence of medical impairment(s)

---

[3] Tenth Circuit precedent has characterized this as a three-step process, citing *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012). The two-step analysis under SSR 16-3p comports with this prior, three-step process under *Luna*. *Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished). The term "credibility," however, is no longer used. SSR 16-3p, at *2.

that result from anatomical, physiological, or psychological abnormalities that could reasonably be expected to produce the symptoms alleged. SSR 16-3p, at *3. Second, once such impairment(s) are established, the ALJ must evaluate the intensity and persistence of the symptoms so she can determine how they limit the claimant's capacity to work. *Id*. at *4. To do this, the ALJ considers various factors (discussed in more detail below). *Id*. at *7-8.

The ALJ's findings regarding symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). However, a "formalistic factor-by-factor recitation of the evidence" is not required where the ALJ states "the specific evidence [she] relies on" in the evaluation. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Because subjective symptom findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determinations when supported by substantial evidence." *Cowan*, 552 F.3d at 1190 (quoting *Kepler*, 683 F.3d at 391). That is not to say the ALJ may simply make "a single, conclusory statement" that the individual's symptoms have been considered or that the claimant's statements are/are not consistent. SSR 16-3p, at *10. Rather, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

Here, while the ALJ accounted for some of Plaintiff's symptoms, her analysis was not "consistent with and supported by the evidence" such that this Court could "assess how [she] evaluated" Plaintiff's symptoms. *Id.*

## 2. The Analysis in this Case

In her decision, the ALJ found various spine- and shoulder-related impairments to be severe at step two (R. 14) and concluded that these medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms (R. 17). The ALJ then considered Plaintiff's subjective statements regarding his impairments, ultimately finding his "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent for the reasons explained in this decision." (*Id.*)

From an initial glance, the ALJ would appear to have gone through the factors required in a symptom evaluation: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of medication; (v) treatment aside from medication; (vi) any other measures the claimant has used to relieve the symptoms; and (vii) any other factors concerning functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, at *7-8. For example, the ALJ weighed *certain* daily activities (R. 17),[4] though the ALJ's reasons for discounting Plaintiff's testimony was unsupported in the record (*see infra*). The ALJ also referenced the location, duration, frequency, and intensity of Plaintiff's symptoms (R. 15-17),[5] but—as noted above—her

---

[4] The ALJ noted Plaintiff's testimony that he needed help getting dressed and performing self-care. (R. 17.) The ALJ also characterized Plaintiff's *Function Report* as indicating he socialized, shopped, drove, and got out of the house as needed. (*Id.*)

[5] The ALJ noted Plaintiff's testimony that pain limited most of his daily activities, that he could not stand more than 15-20 minutes, and that he could sit less than an hour (R. 17); his *Function Report* statement that activities of daily living were limited due to pain (*id.*); his statements to providers of back pain and shoulder pain but denials of leg pain, weakness, numbness, or tingling (R. 16-17); examinations showing an antalgic and abnormal gait, mild right leg weakness, decreased sensation, back and shoulder spasms, and an abnormal stance, but also showing Plaintiff being within normal limits, with no back tenderness, and with a normal gait and stance (R. 15-17).

representation of exam results was often incomplete, creating an impression that the results were more positive than they actually were. Similarly, the ALJ noted precipitating and aggravating factors—or, at least, Plaintiff's testimony that his ability to "be on his feet" and to sit were limited. (R. 17.) The ALJ did not address the type, dosage, effectiveness, and side effects of Plaintiff's medications, except to note he was once on Klonopin and that he was, at times, "non-compliant" or "abusing" his pain medications. (R. 15-16.) The ALJ did, however, address other treatment Plaintiff received for symptom relief (R. 15-17);[6] the different measures he has used to relieve his pain (R. 17);[7] and other factors concerning Plaintiff's functional limitations and restrictions due to pain (*id.*).[8]

After discussing these issues, the ALJ provided the following reason for rejecting Plaintiff's testimony regarding the severity of his symptoms:

> At the hearing, the claimant testified that pain limits most of his activities of daily living. He cannot be on his feet for more than about 15-20 minutes, and sitting is limited to less than an hour at a time. He can lift no more than a gallon of water. He has to lay down to relieve discomfort, but still has trouble sleeping due to pain. He can shop with assistance from his wife and motor scooter, but his driving is limited to short distances. He needs help getting dressed and performing self-care.
>
> In contrast to the above testimony, the claimant has alleged that while his activities of daily living are limited by pain, he wrote on the Function Report that he is able to follow directions, pay attention when needed, socialize, shop, drive, and go out as needed.

---

[6] The ALJ noted that Plaintiff was observed using a cane and that Plaintiff underwent a lumbar laminectomy and discectomy in 2018; received epidural steroid injections in his back and shoulder; underwent an extensive shoulder arthroscopic surgical debridement with acromioplasty; and had substantial imaging taken of his back and shoulder. (R. 15-16.)

[7] The ALJ noted Plaintiff's testimony of lying down to relieve discomfort. (R. 17.)

[8] The ALJ noted Plaintiff's testimony that he could not lift more than a gallon of water. (R. 17.)

10

(R. 17 (citing R.308-15).) The ALJ's citations to this single *Function Report*, however, are inaccurate at best, rendering this portion of the ALJ's symptom analysis inconsistent with and unsupported by the evidence.[9] SSR 16-3p, at *10.

For example, while the ALJ stated Plaintiff can socialize, the *Function Report* merely indicates that Plaintiff's hobbies include watching football with his son and playing games, clarifying that he only does these things "when [his] back allows [him] to do so" and that he is "not able to go as often, can't sit in stands and walk," and that his "hands quit working playing game[s]." (R. 312.) As for "social activities," the *Function Report* indicates that Plaintiff does not spend time with others and that the places he goes to on a regular basis are limited to "carters [sic], pharmacy, library, wife work." (*Id.*) Even then, Plaintiff needs someone to accompany him. (*Id.*)

Similarly, while the ALJ noted that Plaintiff can shop, the *Function Report* merely reports that he shops for food, toilet paper, and bathroom items one time a month. (R. 311.) It says nothing indicating that his shopping is not as he testified—i.e., with the assistance of his wife and a motor scooter (R. 53-54). The same inaccuracies occur when the ALJ states Plaintiff can drive and go out as needed. (R. 17.) Under the "Getting Around" section, the *Function Report* states that Plaintiff goes outside five times a week; that he cannot go out alone since his "back may give away and not be able to walk or stand"; and he drives "only when able, or have to." (*Id.*)

---

[9] The ALJ fails to mention a later report completed by Plaintiff (R. 326-33) and fails to address the multiple *Third-Party Function Reports* completed by Plaintiff's wife (R. 251-67). This could, on its own, constitute reversible error. *See Andrea D. W. v. Kijakazi*, No. 20-CV-00523-JFH-SH, 2022 WL 1192780, at *6 (N.D. Okla. Feb. 9, 2022). Plaintiff, however, fails to raise the issue in his briefing. The Court notes that these reports contained additional information that was not cumulative, contained probative evidence the ALJ must have rejected, and were pertinent to the symptom analysis.

Finally, it is not apparent how the ALJ measured Plaintiff's ability to follow instructions and pay attention as indicating a lack of physical limitation due to pain. Even here, the ALJ misrepresented the *Function Report*, in which Plaintiff stated that how long he could pay attention "depends" on "if [he is] hurting." (R. 313.)

Alone, these inconsistent representations of the evidence merit reversal. However, in the Court's reading of the ALJ's reasoning, it also appears she found Plaintiff's *Function Report* inconsistent with his testimony regarding activities of daily living. (R. 17 (while he alleged "his activities of daily living are limited by pain, he wrote on the Function Report that he is able to follow directions, pay attention when needed, socialize, shop, drive, and go out as needed"). Thus, the undersigned will consider whether such inconsistencies exist. A review of the report indicates that they do not, as the report corroborates—rather than contradicts—Plaintiff's statements:

> 5. How do your illnesses, injuries, or conditions limit your ability to work?
>
> Not able to lift weight. Limited walking distance. Need help in restroom at times due to back. Can't rotate upper body left or right. Right hand has no strength or tendons. Both hands & hips ha[ve] severe arthritis. Constant neck pain, midback, lower back pain, sleep disturbances . . . .

(R. 308.)

> 6. Describe what you do from the time you wake up until going to bed.
>
> Take pain medication, lay on couch till legs work, watch news & crime shows till midnight. Eat 2 times a day. Take meds. 3 times a day. Walk when back lets me. Sleep when back lets me.

(R. 309.) Regarding personal care, the *Report* noted that Plaintiff fed himself, but that his wife put on his shoes and pants; that he bathes standing up only; that he does not care for his hair and shaves every two days with pain; and that his wife sometimes helps him wipe at the toilet. (*Id.*) Plaintiff does not prepare meals—noting repeatedly that he "can't stand

[for] long period[s]" and that "standing hurts over long periods of time"—nor does he do household chores—again, because it "[h]urts to walk or stand for long periods of time." (R. 310-11.) In the same way, when listing his abilities, Plaintiff again states he can lift only 5 pounds, "walk only short distance," and that "sitting hurts hips." (R. 313.)

Taken together, this Court finds the reasons the ALJ gave for her symptom findings were not consistent with the evidence or clearly articulated. *See* SSR 16-3p, at \*10. Particularly, comparing the ALJ's assessment of Plaintiff's symptoms in the decision—where the ALJ relies on a single *Function Report*—to the contents of that report, the undersigned is unable to follow the ALJ's reasoning. This was an error.

The Court further finds the error was not harmless. Harmless error is applied cautiously in the context of social security disability cases. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). It allows the court to "supply a missing dispositive finding . . . in the right exceptional circumstance, i.e., where, based on the material the ALJ did at least consider . . . we could confidently say that no reasonable administrative factfinder . . . could have resolved the factual matter" another way. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). Based on the ALJ's inconsistent and unexplained analysis of Plaintiff's statements, the undersigned cannot make any such statement with confidence. This is especially true in this case, where the ALJ found Plaintiff capable of working as an escort-vehicle driver (R. 19), which requires driving more than limited, short distances, with someone accompanying him. *See* Escort-Vehicle Driver, DOT § 919.663-022, 1991 WL 687886 (4th ed. 1991) (describes job as "driv[ing] vehicle equipped with warning lights and signs to escort trucks hauling mobile homes on public thoroughfares"). The Court cannot confidently state that a reasonable ALJ would necessarily find Plaintiff capable of being an escort-vehicle driver. In any event, finding harmless error would also risk

"violating the general rule against post hoc justification of administrative action" when that justification is "not apparent from the ALJ's decision itself." *Id.*; *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007). As the ALJ's symptom analysis was not clearly articulated in a manner consistent with the evidence, finding harmless error would be improper.

## VI. Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **REVERSED AND REMANDED** for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 23rd day of August, 2023.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT